UNITED STATES of America,
Plaintiff–Appellee,

v.

Oussama Mohamed CHAAR,
Defendant–Appellant.

No. 96–2316.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1997.

Decided Feb. 11, 1998.

Rehearing Denied March 11, 1998.

**360**

Jennifer J. Peregord (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Amy L. Ryntz (argued), Robert E. Forrest (briefed), Raymond & Prokop, Southfield, MI, for Defendant–Appellant.

Before: BOGGS and MOORE, Circuit Judges; and DOWD,* District Judge.

BOGGS, J., delivered the opinion of the court, in which MOORE, J., joined. DOWD, D.J. (pp. 365–368), delivered a separate dissenting opinion.

## OPINION

BOGGS, Circuit Judge.

Oussama Mohamed Chaar appeals from the district court's denial of a motion to suppress evidence, which led to his conviction for smuggling cigarettes. We affirm the district court.

### I

At 12:52 pm, on September 22, 1994, the Detroit office of the FBI received an anonymous tip.[1] The tipster said that Oussama Chaar was smuggling $80,000 worth of cigarettes a week into Michigan and selling them to local gas stations. He said that Chaar and an associate named Jamil would be bringing a shipment of cigarettes in from Kentucky that afternoon some time before 4 pm, and that they would take them in a truck to a storage facility on 23 Mile Road, between I–94 and Gratiot Road. Finally, he described Chaar as: "34 years old, fat guy, glasses, drives 1991 two tone Aerostar, lives in an apartment on 23 Mile near I–94." Chaar had not been the subject of any previous investigations.

The FBI relayed the tip to the Bureau of Alcohol, Tobacco, and Firearms (ATF), which assigned the case to Special Agent Krappmann. Krappmann was informed by other investigating officers that there was another storage area at 21 Mile Road and Gratiot (investigation of the facility at 23 Mile having apparently proved fruitless), and that a check with the facility revealed that Chaar leased two storage lockers there. The rental agent indicated that Chaar had said that he worked for a gas station, and that he would be using the lockers to store excess cigarettes.

At about 4:30 pm, Krappmann called the United States Attorney's office from the storage facility to begin the process of getting a telephonic search warrant. He told Assistant United States Attorney Cynthia Oberg that there were exigent circumstances justifying the telephonic process, because it would be easy for a smuggler to transfer the illegal cigarettes into used, tax-stamped cases; because it was too late in the day to travel back to Detroit (about 25 miles) to get a warrant by normal means; and because it would be difficult to maintain visual surveillance in the meantime.

Krappmann, Oberg, and Magistrate Judge Lynn Hooe had a conference call at 4:50. According to an affidavit filed later by Krappmann, the call was tape recorded. According to the boilerplate language of the

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. These facts are taken primarily from an affidavit prepared by the investigating agent long after the events in question. As will be discussed below, this is problematic, but Chaar has not offered evidence to contradict the facts as set forth here.

warrant form, Krappmann was appropriately placed under oath. Krappmann and Magistrate Judge Hooe filled out identical warrant forms in an identical manner. Magistrate Judge Hooe determined that there was probable cause to believe that contraband cigarettes were being stored at Chaar's storage lockers at the storage facility on 21 Mile, and that the exigent circumstances justified a telephonic search warrant. At about 5:05, Magistrate Judge Hooe authorized the warrant and gave Krappmann permission to sign Hooe's name to Krappmann's copy of the warrant form, pursuant to FED.R.CRIM.P. 41(c)(2)(C).

Shortly after the magistrate judge authorized the warrant, Chaar and another man arrived in a two-tone Aerostar. Chaar mostly matched the physical description the informant had given. Krappmann and his assistant observed Chaar and his accomplice go to Chaar's storage lockers and unload cases of cigarettes from the van. As the officers approached the van, they noted that the cases (inside the van but easily viewable) did not have Michigan tax stamps on them. When the officers identified themselves to the men, the men shut the van doors. The officers executed the warrant and seized from the storage lockers 687 cartons of cigarettes that lacked Michigan tax identification.

Chaar was indicted for possession of contraband cigarettes, in violation of 18 U.S.C. § 2342(a), and for aiding and abetting his co-conspirator, in violation of 18 U.S.C. § 2(a). He moved to suppress the incriminating evidence. The district court rejected the motion, and Chaar entered into a plea agreement with the government. The agreement was conditional, allowing Chaar to appeal the denial of his motion to suppress. Chaar pleaded guilty, and the district court sentenced him to 36 months of probation and a $2,500 fine. Chaar then filed this timely appeal.

Chaar raises three objections in his appeal. First, he argues that the evidence obtained pursuant to the warrant should have been suppressed because the recording of the telephonic conference between Krappmann and the magistrate judge (and the transcript, if one was made) has been lost. No duplicates are available, and so, Chaar argues, this court has no basis to review the warrant. Second, he claims that there was not probable cause to support the warrant. Third, he argues that the *Leon* "good faith" exception should not apply.

## II

FED.R.CRIM.P. 41(c)(2)(D) requires, with regard to telephonic warrants, that:

> [T]he Federal magistrate judge shall record ... all of the call after the caller informs the Federal magistrate judge that the purpose of the call is to request a warrant. Otherwise a stenographic or longhand verbatim record shall be made. If a voice recording device is used or a stenographic record made, the Federal magistrate judge shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court. If a longhand verbatim record is made, the Federal magistrate judge shall file a signed copy with the court.

The government admits that those requirements were clearly violated in this case. Although the record does not reveal how, the tape recording was lost and the transcript (if there was one) was lost as well. The first question before us is what effect this violation of the rules has on the admissibility of the evidence.

## A

■ Initially, we note that as a matter of placing blame, this case is a poor candidate for suppression of the evidence. "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984). We do not exclude evidence, absent constitutional violations, unless the exclusion furthers the purpose of the exclusionary rule, *id.* at 918, 104 S.Ct. at 3418, and it was Magistrate Judge Hooe's error (not any misconduct by Officer Krappmann) that deprived us of both tape

and transcript. Therefore, on the facts of this case, exclusion is an inapt remedy.[2]

■ The disposition of this Rule 41(c)(2)(D) violation is a matter of first impression in this circuit. Most Rule 41(c)(2)(D) cases, in this and other circuits, have dealt with the oath requirement, which is not at issue here, as Chaar does not contest the validity of Krappmann's oath.[3] Outside of the oath context, two other circuits have considered failures of the recording and transcription requirements of Rule 41(c)(2)(D). In *United States v. Richardson,* 943 F.2d 547, 549 (5th Cir.1991), the Fifth Circuit held that in the absence of a recording or transcript, a warrant does not merit a presumption of regularity. Nevertheless, the court held that it was appropriate for a reviewing court to use extrinsic evidence to examine the circumstances surrounding the issuance of the warrant. *Ibid.*

The Ninth Circuit has held that

unless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where,

(1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is

evidence of intentional and deliberate disregard of a provision in the Rule. *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir.1981).

■ We agree with both of these rulings in the following senses with respect to Rule 41(c)(2)(D).[4] First of all, although the evaluation of a warrant after a violation of Rule 41(c)(2)(D) must be searching and skeptical (the Rule is, after all, designed to preserve evidence for reviewing courts), district courts are well-equipped to weigh any evidence that is available after the fact, and defendants can both contest evidence through cross-examination and submit their own evidence. Furthermore, suppression is an appropriate remedy only when the violation is either of constitutional dimensions (*i.e.* the search became constitutionally unreasonable), is prejudicial, or is intentional.

None of these three bases for suppression apply here. First, as will be discussed below, the search was not unconstitutional per se. Second, Chaar has given us no basis to conclude that, absent the violation, the search would have been less abrasive or would not have occurred. Third, Chaar has not alleged, let alone shown evidence, that the violation was intentional. Although we can imagine cases in which a Rule 41(c)(2)(D)

---

**2.** Despite the fact that the Rule 41 violation was the fault of the judicial officers involved, not the executive ones, it seems curious to us that the prosecutor supposedly did not know about the deficiency until Chaar's motion to dismiss was filed.

Rule 41(g) requires the magistrate judge to file with the district court all papers in connection with the warrant (including, presumably, the transcript of the officer's sworn testimony). Assuming that the tape and any transcript were lost at some time before the eve of the indictment, it should have been apparent to a prosecutor working on the case that there could be a Rule 41 problem. If the loss occurred after filing in the district court, the prosecution should have been alert to document that fact.

Although the government prevails in this particular case, we can foresee (contrary to the dissent's pessimistic fourth footnote) that if this sort of sloppiness by government agencies—either judicial or executive or both—continues, there will be cases in which otherwise sound convictions will have to be overturned. We admonish the government to take steps to ensure that this does not occur.

**3.** We have held in the context of oaths for warrants in general that "[t]he Fourth Amendment does not require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit." *United States v. Shields,* 978 F.2d 943, 946 (6th Cir.1992). That case did not concern federal officers, however, and the court specifically noted that it was only discussing the Fourth Amendment, and did not purport "to closely examine the prescriptions of Rule 41." *Id.* at 946 n. 5.

In another case, pointing to the clear and simple oath requirements of Rule 41(c)(2)(D) and the Fourth Amendment, we required an officer obtaining a telephonic warrant to take the oath before giving testimony. *United States v. Shorter,* 600 F.2d 585, 588–89 (6th Cir.1979). As mentioned above, however, Chaar does not contest the validity of Krappmann's oath.

**4.** To the extent that *Stefanson* disclaimed the stringent oath requirement we expressed in *Shorter,* we do not support *Stefanson.* As mentioned above, however, Chaar has not challenged the sufficiency of the oath.

violation would meet our criteria, we require more than mere conjecture to suppress evidence.

We acknowledge that neither we nor Chaar have any way now of knowing what the magistrate judge knew when he issued the warrant. Not even the original tip sheet is part of the record—the only evidence from which we can evaluate the sufficiency of the evidence underlying the warrant is Krappmann's affidavit, which was prepared nineteen months after the events it described. Given this epistemological problem, we are less than enthusiastic about affirming this search. However, Chaar gives us no evidence to support a decision to suppress it.

Chaar has the burdens of production and persuasion in seeking suppression of this evidence. *United States v. Blakeney,* 942 F.2d 1001, 1015 (6th Cir.1991), *cert. denied,* 502 U.S. 1035, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992); *United States v. Smith,* 783 F.2d 648, 650 (6th Cir.1986). As such, the fact that there was no testimony to refute Krappmann's testimony, from either Magistrate Judge Hooe, Oberg or anyone else present in the courthouse when the warrant was issued, redounds to Chaar's detriment. Chaar was free to call any or all of these people as witnesses; he may well have believed that such testimony would not be helpful to him, and we will not strain to disagree. Furthermore, despite having a full and fair opportunity to cross-examine Krappmann at the suppression hearing, Chaar did not challenge the validity of Krappmann's oath or question Krappmann's version of the events surrounding the search and arrest.[5] Chaar also made no attempt to show that he was prejudiced by the Rule 41(c) violation, and adduced no evidence to suggest that Krappmann's account was incorrect or that the tape and transcript had been lost intentionally. Therefore, we will not suppress this evidence merely on the basis of the Rule 41 violation.

### B

■ Even though the Rule 41(c)(2)(D) violation does not itself require suppression of this evidence, we must still review the constitutionality of this search. The Fourth Amendment mandates that searches be reasonable. It also requires warrants supported by probable cause, subject to a few circumscribed exceptions. Even though the violation of Rule 41(c)(2)(D) in this case does not mandate suppression, the warrant does not necessarily pass constitutional muster.

■ Evaluating this warrant to determine if its issuance was supported by probable cause is a difficult undertaking, given that the only real source of evidence we have is an affidavit written nineteen months after the fact. We need not engage in this complicated and speculative exercise, however, because there is a simpler and relatively non-speculative reason to conclude that this search was constitutional: the "good-faith exception" of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[6]

---

5. For instance, it is unclear how the officers were able to determine that the cigarette cases in the van had no tax stamps, since they presumably could not see all of the sides of each case. Chaar did not, however, pursue this argument at the suppression hearing.

The only portion of Krappmann's testimony that spoke to the sufficiency of the evidence that was before the magistrate judge concerned the anonymous tip, and how it had been transmitted from the FBI to the ATF to the magistrate judge and, nineteen months later, to the reviewing court. Krappmann testified he believed that nothing had been "lost in the translation," although he noted that the tip was not part of the record. Chaar did not press this point.

In general, most of the testimony that Chaar's lawyer tried to elicit regarded facts to which the government had already stipulated. As a result of this, the district court became impatient with the lawyer and hinted that it was getting close to issuing sanctions based on those questions. There is no reason for us to believe, however, that the district court acted unfairly or that Chaar was prevented from making a case by following a fruitful line of examination or cross-examination.

6. We have rejected three other justifications for a warrantless search here.

First, the "search incident to arrest" exception fails. The officers in this case likely had probable cause to arrest the defendants, based on the anonymous tip, the unstamped cigarette cases, and the defendants' suspicious behavior. A lawful search incident to that arrest could have included the van full of cigarettes. *United States v. Patterson,* 993 F.2d 121, 122–23 (6th Cir.1993) (allowing searches of vehicles incident to arrest, regardless of arrestee's lack of proximity to vehi-

We have summarized the *Leon* doctrine as follows:

> [T]he exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.

> [*Leon*] noted four specific situations where the good faith reliance exception would *not* apply: (1) where the supporting affidavit contained knowing or reckless falsity; (2) where the issuing magistrate failed to act in a neutral and detached fashion, and serve[d] merely as a rubber stamp for the police; (3) where the supporting affidavit d[id] not provide the magistrate with a substantial basis for determining the existence of probable cause, or in other words, where the warrant application was supported by [nothing] more than a 'bare bones' affidavit; and (4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*United States v. Leake,* 998 F.2d 1359, 1366 (6th Cir.1993) (quotation marks and citations omitted) (third, fourth, and fifth alterations in original).

Chaar offers no evidence that Krappmann lied to obtain the warrant. We are given no basis to conclude that the evidence Krappmann provided contained knowing or reckless falsity—if Krappmann's evidence was deficient, it was because it was of poor quality, not because it was deliberately falsified. In fact, Krappmann has been more than forthcoming about the extent to which the tipster's information proved inaccurate, belying a conclusion that the government "practiced to deceive."

There is also no evidence that Magistrate Judge Hooe failed to act in a neutral and detached manner or was acting as a "mere rubber stamp." There is no evidence to suggest that he was somehow involved in the "competitive enterprise of ferreting out crime," *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), or that he was blindly and automatically approving the warrant.

Somewhat relatedly, there was significant evidence supporting probable cause in this case. The warrant was based on the anonymous tipster's information that Chaar and an accomplice were smuggling cigarettes to a particular place; and the location of storage lockers in the vicinity, rented by Chaar for the purpose of storing cigarettes. The tipster, while anonymous and thus of untested reliability, gave a personal description of Chaar and indicated who his illicit customers were. Viewing the evidence at its weakest, the magistrate judge had good reason to believe, based on Krappmann's corroboration, that Chaar stored two lockers worth of cigarettes. The magistrate judge could reasonably have made the inferential leap (more

---

cle). However, even though the cigarettes in the vehicle apparently had no tax stamps, and even though 650 cartons of them were seized pursuant to the warrant, the indictment was based solely on cigarettes taken from the storage lockers. Only the suppression of the latter cigarettes is at issue, and the search incident to arrest provides no basis for a warrantless search of the storage lockers.

Similarly, the "exigent circumstances" justification is inapplicable. Even if there was no time to get a warrant to search the defendants or their car, the storage locker easily could have been guarded while a warrant was obtained. *See United States v. Kelly,* 913 F.2d 261, 265 (6th Cir.1990) (holding that search of locked suitcase requires warrant, absent exigent circumstances or consent).

Finally, "plain view" is unavailing. The district court noted that the officers observed the contraband cigarettes in Chaar's vehicle "in plain view." It is unclear if the district court meant this as an alternate basis for approving the search, but if this was its intent, it was wrong. The requirements for a "plain view" exception are well-settled:

> Four conditions must be present before police may seize an item pursuant to the plain view doctrine: (1) the item must be in plain view; (2) the item's incriminating nature must be immediately apparent; (3) the item must be viewed by an officer lawfully located in a place from which the object can be seen; and (4) the item must be seized by an officer who has a lawful right of access to the object itself.

*United States v. Jenkins,* 124 F.3d 768, 774 (6th Cir.1997). The fourth requirement is the problem here, because the officers had no right of access to the storage lockers without a warrant. "[E]ven where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Horton v. California,* 496 U.S. 128, 137 n. 7, 110 S.Ct. 2301, 2308 n. 7, 110 L.Ed.2d 112 (1990).

like a hop) that someone storing so many cigarettes, about whom a tip had been received, could very well be smuggling those cigarettes.[7] Chaar points to inaccuracies in the anonymous tip, and deficiencies in Krappmann's corroborative efforts, but he does not convince us that the magistrate judge based his conclusion on inadequate "bare bones" evidence.

Finally, based on the foregoing, we conclude that Krappmann's reliance on the warrant both was in good faith and was objectively reasonable. Accordingly, the *Leon* standards are met and the search was valid.

## III

For the foregoing reasons, we AFFIRM the district court.

DOWD, District Judge, dissenting.

My fellow colleagues forgive the violation of the provisions of Rule 41(c)(2)(D) [1] and deny the sanction of suppression based on the teachings of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). I respectfully disagree and thus dissent.

Initially, I find the violation of Fed. R.Crim.P. 41(c)(2)(D) to be considerably more serious than does the majority. The majority opinion concludes that the violation in this case, i.e. the failure of the recording and transcription requirements of Rule 41(c)(2)(D), does not warrant suppression of the evidence. The majority bases its holding on cases from the Fifth and Ninth Circuits which held this same violation to be a mere "technical" violation of Rule 41(c)(2)(D), which did not mandate suppression. I find the majority's reliance on these cases to be misplaced for the reason that there exists a significant factual difference between the instant case and the cases cited by the majority. In the cases forgiving the violation of Rule 41, the magistrate judge testified at the suppression hearing as to his memory of the conversation, thus corroborating the testimony of the affiant and presenting the reviewing court with a more complete record as to the facts which led to the initial determination of the existence of probable cause; in the instant case, however, Magistrate Judge Hooe did not testify.

In the first case cited by the majority, *United States v. Richardson*, 943 F.2d 547, 549 (5th Cir.1991), the Fifth Circuit was faced with the review of a telephonic search warrant application in which the recording equipment did not work, and, as a result, the magistrate failed to make any record of the communication in which the affiant applied for the search warrant. At the subsequent suppression hearing, while the district court had no record of the oral affidavit, both the magistrate and the affiant testified as to their memory of the conversation. *Id.* The district court was therefore able to corroborate the affiant's testimony with that of the magistrate judge, and thus come to the appropriate judicial determination as to whether probable cause was in fact presented to the magistrate judge at the time the warrant was issued. The appellate court in that case noted with approval the district court's review of the magistrate's testimony: "[s]ince

---

7. Far from "engag[ing] in sheer speculation" as to the basis of the magistrate judge's ruling, Dissent at 18, we base our characterization of the facts before the magistrate judge on the uncontested sworn testimony of Officer Krappmann.

1. The rulemaking process led to the 1977 amendment to Rule 41 by adding the provisions of Rule 41(c)(2). The advisory committee notes for the 1977 amendment, presented in support of the passage of the amendment, stated that for such a subdivision (c)(2) warrant to issue, four requirements must be met. The fourth requirement would have solved the problem in the instant case:

> Return of the duplicate original warrant and the original warrant must conform to subdivision (d). *The transcript of the sworn oral testimony setting forth the grounds for issuance of the warrant must be signed by affiant in the presence of the magistrate and filed with the court.*

(Emphasis added).

An examination of subdivision (c)(2), however, fails to disclose the underlying material. Section (2)(e) of Pub.L. 95–78 provided in part that the amendment by the Supreme Court (in its order of Apr. 26, 1976) to subdivision (c) of Rule 41 of the Federal Rules of Criminal Procedure (subdivision (c) of this rule) is approved in a modified form. Presumably, the underlying material in the committee notes referring to item 4 was deleted by the Congress.

the [district] court could not review a tape or transcription of the telephone call between [the affiant] and the magistrate, it acted well within its discretion in basing its decision on a thorough review of the testimony of [the affiant] and the magistrate." *Id.*

The other case cited by the majority, *United States v. Stefanson,* 648 F.2d 1231 (9th Cir.1981), involved the application for a telephonic search warrant in which the magistrate judge recorded only a portion of the telephone call due to problems with the recording device. Two days after granting the search warrant, the magistrate judge executed a transcript of the phone call, using his memory and the portion of the tape recording that existed. *Id.* at 1233. At the subsequent suppression hearing, the district court heard testimony from the magistrate judge as to his memory of the events, and denied the motion to suppress the evidence. The Ninth Circuit upheld this denial, holding that the mere "technical" violation of Rule 41 did not justify suppression due to the fact that the magistrate judge testified to his memory of the conversation and thereby corroborated the affiant's statements and satisfied the reviewing courts that probable cause had, in fact, been presented to the magistrate judge. *Id.* at 1235.

In sharp contrast to those cases is the instant case, in which the only evidence of the conversation presented to the district court at the suppression hearing was the affidavit of the affiant, executed nineteen months after the issuance of the warrant, and the affiant's subsequent testimony detailing his memory of what facts he provided to Magistrate Judge Lynn Hooe, unaided by the either corroborating or conflicting testimony of Magistrate Judge Hooe. The lack of any testimony by the magistrate judge distinguishes this case from the cases cited by the majority in which the magistrate judges did testify. *See also United States v. Allen,* 586 F.Supp. 825 (N.D.Ill., 1984)(holding that even though tape recording of phone call

from affiant to magistrate was blank, suppression was not necessary due to the fact that the magistrate and the affiant both testified as to the contents of the conversation). For this reason, I find the violation of Rule 41(c)(2)(D) in this case to be more than a mere "technical" violation.

The obvious purpose behind the requirements of a transcription of the information provided by the affiant under the provisions of Rule 41(c)(2)(D) is to allow reviewing courts to determine if the application for the warrant met the probable cause requirements of the Fourth Amendment. The failure to comply with those provisions in this case prohibits the appropriate judicial determination as to whether probable cause was presented to Magistrate Judge Hooe in support of the issuance of the warrant. Moreover, the lack of any testimony by the magistrate judge makes reliance on the above-cited cases improper.

The majority acknowledges the fact that the magistrate judge did not testify in this case, but concludes that this only worked to disadvantage the defendant, since, as the party seeking suppression, he bore the burdens of persuasion [2] and production.[3] *See United States v. Blakeney,* 942 F.2d 1001, 1015 (6th Cir.1991), cert. denied, 502 U.S. 1035, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992). It is my belief that this circular rationale fails to recognize the shifting of the burden of production that occurs on a motion to suppress, and in this case put the burden on the government to produce the testimony of the magistrate judge.

Initially, the burden of production is on the defendant to make a prima facie showing of illegality. *United States v. de la Fuente,* 548 F.2d 528, 533–34 (5th Cir.1977). Following such showing, the burden of production shifts to the government to present rebuttal evidence. *Richardson, supra,* at 548–49. In this case, I believe that the defendant met

---

2. "[O]bligation which rests on one of the parties to an action to persuade the trier of the facts, generally the jury, of the truth of a proposition which he has affirmatively asserted by the pleadings." *Director, OWCP, Department of Labor v. Greenwich Collieries [Ondecko],* 512 U.S. 267, 275, 114 S.Ct. 2251, 2256, 129 L.Ed.2d 221 (1994).

3. "[A] party's obligation to come forward with evidence to support its claim." *Greenwich Collieries, supra,* at 272, 114 S.Ct. at 2255.

his initial burden of production concerning the illegality of the warrant by presenting evidence of the Rule 41(c)(2)(D) violation. The burden of production then shifted to the government to rebut this showing of illegality with evidence that the warrant was properly supported by probable cause. This could have been done by presenting the testimony of the magistrate judge who issued the warrant. However, since no such testimony was offered, I believe that the showing of illegality was never rebutted by the government, and thus the motion to suppress should have been granted.

In addition to my finding that the failure to record the conversation or have the magistrate judge testify at the district court level is a substantial violation of Rule 41(c)(2)(D), I disagree with the majority's decision that this search was constitutional under the "good faith exception" of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Leon* prohibits the sanction of exclusion of the evidence seized in violation of the Fourth Amendment if the reliance on the magistrate's determination of probable cause by the officers executing the warrant was objectively reasonable. *Id.* at 922, 104 S.Ct. at 3420. However, *Leon* recognizes exceptions to that general rule, including: (1) "bare-bones" affidavits, where the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; and (2) situations where the officer's reliance on the warrant was neither reasonable nor in good faith. *Id.* at 923, 104 S.Ct. at 3420–21. It is my position that the teachings of *Leon* cannot be applied to this case because both of the aforementioned exceptions apply, rendering the warrant invalid.

Under the first exception, *Leon* will not uphold a search based on an affidavit which did not provide the magistrate judge with a sufficient basis on which to find probable cause. *Leon* therefore necessarily requires an examination of whether the affidavit was so inadequate as to preclude the magistrate judge from making a determination of the existence of probable cause. In this case, however, such an examination is impossible, and therefore the application of *Leon* is im-

proper. Here, the only evidence of the telephonic affidavit is the memory of the affiant as to what information he provided to the magistrate judge to justify the finding of probable cause. Moreover, that memory is based on the affiant's recollection nineteen months after the issuance of the warrant, with no corroboration from the magistrate judge who issued the warrant. These facts simply do not provide the reviewing courts with sufficient evidence to apply *Leon*. Rather, we are being asked to now extend the "good faith exception" to a situation in which we must conjecture as to what facts the affiant presented the magistrate judge, and whether based on those facts, the magistrate judge should have determined that probable cause existed.

The majority here engages in sheer speculation as to what facts the magistrate judge was presented with, and concludes that *Leon* does apply:

> Viewing the evidence at its weakest, the magistrate judge had good reason to believe, based on Krappmann's corroboration, that Chaar stored two lockers worth of cigarettes. The magistrate judge could reasonably have made the inferential leap (more like a hop) that someone storing so many cigarettes, about whom a tip had been received, could very well be smuggling those cigarettes.

The majority therefore finds a sufficient basis on which to conclude that probable cause existed; and thus rejects the first exception to *Leon*. I, however, find an insufficient basis on which to review the conversation between the affiant and the magistrate, and therefore find that the first exception to *Leon* exists and renders the warrant invalid.

Furthermore, I find that the second exception to *Leon* exists, namely, that there was no reasonable basis for the officer to believe that good faith existed. The affiant here concedes that the investigation and search were commenced on the same day, based upon an anonymous tip received by another officer. This situation necessarily requires an application of this circuit's previous rule stating that when an anonymous tip provides the basis for establishing probable cause, the affiant must meet a higher

standard to establish probable cause due to the inherent limitations of anonymous tips. *See United States v. Leake,* 998 F.2d 1359, 1363 (6th Cir.1993)(holding that review of warrant issued on the basis of anonymous tip requires test of whether "totality of the circumstances" supports the conclusion that evidence or contraband will be found at a particular place). In *Leake,* we found *Leon* inapplicable, and held that there was no probable cause to support the issuance of the warrant due to the "limited information provided by the anonymous caller, coupled with the brief limited surveillance by the affiant officer that turned up nothing unusual." *Id.* at 1367.

I find that similar insufficiencies exist in the evidence presented to the district court in this case, which prevent the application of *Leon.* Here, as in *Leake,* it was an anonymous tip that led to the initial investigation of the defendant. What is more is that the tipster's information as to the location of the facility proved to be incorrect, and there was no future activity described by the tipster which could be corroborated by the officers before applying for the search warrant. As a result, what we know of the tipster's information fails to suggest even a hint of sufficient indicia as to the tipster's credibility. *See Leake, supra,* at 1365.

Therefore, based on the record before the district court, the motion to suppress should have been granted.[4] I would vacate the conviction and sentence and remand for further proceedings. Thus I dissent.

---

**4.** I acknowledge that the teachings of *Leon* emphasize that the purpose of the exclusionary rule is to deter police misconduct rather than to punish errors of judges and magistrates. However, every police officer worth his salt knows that the proper execution of a search warrant includes the subsequent filing of an inventory of those things seized. Presumably a sophisticated police officer, such an agent of the ATF, knowledgeable

enough of Rule 41(c)(2)(D) to make use of the rule, and, assisted in the application by an assistant United States Attorney, would be conscious of and concerned with the need to comply with the transcription provisions of Rule 41(c)(2)(D). If the errors in this case pass muster, when revealed, it is difficult to conceive of a violation of the transcription provisions of Rule 41(c)(2)(D) that would cause judicial concern.