2006 UT 79

**Brian R. ANDERSON, personally and on behalf of a class of persons similarly situated, Petitioner,**

v.

**The Honorable James R. TAYLOR, The Honorable John C. Backlund, The Honorable Lynn W. Davis, The Honorable Donald J. Eyre, Jr., The Honorable Steven L. Hansen, The Honorable Fred D. Howard, The Honorable Claudia Haycock, The Honorable Howard H. Maetani, The Honorable Samuel McVey, The Honorable Derek P. Pullan, The Honorable Gary D. Stott, and The Honorable Anthony Schofield, Judges, Fourth District Court in and for Utah County, State of Utah; Paul Vance; Lori Woffinden; and Eileen Jemison, Respondents.**

No. 20050262.

Supreme Court of Utah.

Dec. 5, 2006.

Brian M. Barnard, James L. Harris, Jr., Salt Lake City, for petitioner.

Brent M. Johnson, Salt Lake City, for respondents.

## OPINION AMENDED

PARRISH, Justice:

¶ 1 Petitioner Brian R. Anderson challenges the practice of the Fourth Judicial District Court as it relates to the issuance of search warrants. Following a search of his residence conducted pursuant to a warrant issued in the Fourth District, Anderson unsuccessfully attempted to obtain from the court copies of the documents supporting the warrant. After learning that the court routinely fails to retain copies of the search warrants it issues and the affidavits used in obtaining them, Anderson filed a petition for extraordinary writ, seeking declaratory and injunctive relief against judges and court personnel in the Fourth District. Specifically, Anderson requests a declaration that the practice in the Fourth District violates the federal and state constitutions and applicable statutes. Anderson also seeks an injunction requiring that the Fourth District retain a copy of all search warrants issued and their supporting documentation. Because we agree that the practice in the Fourth District violates Utah law, we exercise our supervisory power over the courts of this state to require that they retain copies of all search warrants issued and all documents supporting the request for such warrants.

## BACKGROUND

¶ 2 The Fourth District Court does not routinely retain copies of either the search warrants issued in the district or the material submitted in support of search warrant applications. Rather, after issuing a warrant, the issuing magistrate returns both the warrant and the supporting material to the law enforcement officer seeking the warrant. After the warrant is executed, the officer delivers the original warrant, the supporting material, the return, and the inventory of items seized in the search to the magistrate, who then reviews it and either files it with the court or returns it to law enforcement with a request that law enforcement file it with the court.

¶ 3 On Friday, October 8, 2004, a magistrate in the Fourth District Court issued a search warrant based on an affidavit written and signed by Detective Troy Beebe, a police officer with the Provo City Police Department. Later that evening, police officers executed the warrant and searched Anderson's residence.

¶ 4 Four days later, on October 12, 2004, Anderson went to the district court clerk's office and requested a copy of the affidavit used to obtain the search warrant for his residence. The clerk's office informed Anderson that neither the original nor a copy of the affidavit had been filed with the court and that it had no record of the warrant. On October 21, 2004, an officer returned the warrant and the supporting affidavit to the magistrate, but the magistrate did not file the documents with the Fourth District Court clerk's office at that time.

¶ 5 On October 24, 2004, Anderson filed in the Fourth District Court a civil rights complaint against judges and court personnel in that district. The case was subsequently transferred to the Second District Court, where the defendants moved to dismiss. Also pending in the Second District Court was a case involving similar claims against judges and court personnel in the Third District Court. The defendants in that case had also filed a motion to dismiss.

¶ 6 While the motions to dismiss were pending in the district court cases, Anderson filed a petition for an extraordinary writ directly with this court.[1] Anderson argues that the practice of issuing a warrant without retaining copies of the warrant or the material supporting the request for the warrant violates the Fourth and Fourteenth Amendments to the United States Constitution, article I, sections 7 and 14 of the Utah Constitution, and Utah Code sections 77–23–203 and 77–23–204. Anderson has requested that this court issue a declaratory judgment enjoining this practice and declaring it to be a violation of his constitutional rights. He argues that the Fourth District Court should be required to retain copies of all the search warrants it issues, as well as the supporting material associated with those warrants. Anderson has also requested that we certify a class of similarly situated plaintiffs and award him his attorney fees.

¶ 7 Approximately ten days after Anderson filed his petition for extraordinary writ, the Fourth District Court located and filed with the clerk's office the search warrant documents at issue. We have jurisdiction over Anderson's petition for extraordinary writ pursuant to Utah Rule of Civil Procedure 65B(d).

## ANALYSIS

¶ 8 Anderson's petition raises two issues. First, he alleges that the Fourth District Court violated the federal and state constitutions and Utah statutory law when it failed to retain, at the time of issuance, a copy of the search warrant issued by the court and the

original affidavits on which the warrant was based. Second, he alleges that a similar violation occurred when the Fourth District Court failed to make available to him the search warrant and supporting affidavits after the warrant had been executed.

¶ 9 The Fourth District Court asserts that we need not reach the merits of Anderson's petition because he lacks standing to challenge its practices. The Fourth District argues that Anderson's claims became moot when the search warrant and other related documents were filed with the court. It reasons that this translates into a lack of standing because the fact that Anderson was previously subject to a search does not give rise to the suggestion that the Fourth District's policies present him with any future threat.

¶ 10 We are unpersuaded by the Fourth District's challenge to Anderson's standing. Although Anderson's petition may be technically moot, it falls within a recognized exception to the mootness doctrine. We outlined this exception in *Wickham v. Fisher*:

> The principles that determine the justiciability of the instant case are the well-established rules which permit a court to litigate an issue which, although technically moot as to a particular litigant at the time of appeal, is of wide concern, affects the public interest, is likely to recur in a similar manner, and, because of the brief time any one person is affected, would otherwise likely escape judicial review. The law provides no exemption from judicial scrutiny of unlawful acts which are likely to be repeated because they do not fall within the usual principles of standing and justiciability.

629 P.2d 896, 899–900 (Utah 1981) (citations omitted).

¶ 11 Anderson's claims qualify for review under this well-recognized exception to the mootness doctrine. Anderson's challenge to the practice of the Fourth District Court is a quintessential example of a claim that, while

---

1. After Anderson filed his petition for extraordinary writ, the Second District Court consolidated the district court cases against the Fourth Dis-

trict Court and the Third District Court and stayed those actions pending resolution of Anderson's petition.

technically moot, deserves review. The claims Anderson raises are present every time a search warrant is issued by the Fourth District Court. Yet it is difficult to conceive of any such claim that will not become technically moot before it wends its way through the adjudicative process. Indeed, once a challenge is initiated, law enforcement will have every incentive to immediately file the documentation supporting the search, thereby mooting the particular claim.

¶ 12 In addition, this issue is one that affects the public interest. Anderson's petition raises significant issues regarding the integrity of the court's record-keeping systems, including the potential for law enforcement to alter search warrants and supporting documentation. It also raises serious issues relating to an individual's right to challenge the validity of a warrant. Because the right to be free from unreasonable searches and seizures is a right guaranteed by the United States and Utah Constitutions, maintaining that right is a public interest of the highest order.

¶ 13 The Fourth District further argues that we should decline to reach the merits of Anderson's petition because our Advisory Committee on the Rules of Criminal Procedure is best equipped to remedy any deficiencies in the current practices of the Fourth District Court. While we acknowledge that our advisory committee may be a more expedient forum for proposing a comprehensive solution to the problem presented, that does not justify our refusal to decide the issue. Expediency is not part of the mootness doctrine and does not relieve this court of its responsibility to resolve this petition.

¶ 14 The Fourth District Court has also urged us to decline review of this matter on the basis that Anderson is ineligible for extraordinary relief. Under rule 65B(a) of the Utah Rules of Civil Procedure, one may seek extraordinary relief only when "no other plain, speedy and adequate remedy is available." The Fourth District Court asserts that Anderson is not entitled to such relief because he has alternative means of

redress. Specifically, the Fourth District Court suggests that Anderson could have filed a civil rights action against law enforcement, pursued an administrative appeal based on the court's failure to provide the requested records, or challenged the legality of the search within the context of any criminal proceedings arising therefrom.

¶ 15 We are unpersuaded that any of these alternatives are an adequate substitute for the extraordinary relief Anderson seeks. First, there is no basis for a civil rights suit against law enforcement, as there is no evidence that the search itself was illegal and law enforcement had no control over the practices of the Fourth District Court. With respect to the second suggestion, an administrative appeal based on the court's failure to produce the records at issue would have been futile inasmuch as Anderson is not challenging his right to access records in the possession of the court, but rather the court's policy of not maintaining control over the records in the first place. Finally, Anderson could not raise the issue in the context of a related criminal proceeding as no criminal charges were ever filed against him. Thus, we conclude that Anderson lacked any other plain, speedy, or adequate remedy and was therefore entitled to seek extraordinary relief pursuant to rule 65B of the Utah Rules of Civil Procedure.

¶ 16 Having concluded that Anderson has standing to pursue his claims, we turn to the merits of his petition. Anderson requests relief on three alternative grounds: (1) Utah statutory provisions; (2) article I, sections 7 and 14 of the Utah Constitution; and (3) the Fourth and Fourteenth Amendments to the United States Constitution. Because we grant extraordinary relief on statutory grounds, we do not reach Anderson's constitutional claims.

¶ 17 Statutory authority concerning the issuance and handling of warrants is located in Utah Code sections 77–23–201 to – 212 (2003).[2] The applicable version of Utah Code section 77–23–209 stated that upon the return of a search warrant to the issuing magistrate, the magistrate shall forward the

---

**2.** Section 77–23–209 was amended in 2005, but the new language does not affect our reasoning.

warrant, return, inventory, and depositions or affidavits "to the appropriate court of the county having jurisdiction within 15 days after the return." Utah Code Ann. § 77–23–209 (2003) (amended 2005).[3] The Fourth District argues that nothing in the statute requires that the court retain a copy of the warrant or supporting material prior to the time when the warrant has been executed and a return delivered to the magistrate. We disagree.

¶ 18 The statute in effect at the time police officers searched Anderson's residence specifically provided that "evidence to be considered by a magistrate in the issuance of a search warrant ... be given on oath and either reduced to writing or recorded verbatim."[4] It further provided that "[a]ny person having standing to contest the search may request and shall be provided with a transcription of the recorded testimony in support of the application for the warrant." *Id.* If the court fails to maintain a record of the testimony supporting a warrant application in a manner that will ensure its integrity, these requirements are rendered meaningless.[5] *See, e.g., In re Up North Plastics,* 940 F.Supp. 229, 232–33 (D.Minn.1996) ("The Fourth Amendment requirement of probable cause is meaningless without some way for targets of the search to challenge the lawfulness of that search."). We therefore conclude that the current practice of the Fourth District Court is inconsistent with the statutory requirements.[6]

■ ¶ 19 The Fourth District Court also argues that its policy is justified because the Rules of Judicial Administration allow for the release of records to noncourt personnel. We similarly find this argument unpersuasive. While rule 4–205(3) of the Utah Rules of Judicial Administration allows for records to be removed "from their normal place of storage ... by individuals obtaining the written authorization of the clerk of the court or the judge assigned to the case," there is no allegation that such a written authorization occurred in this case. Also, the records must be returned "within two days," *id.,* a significantly shorter period of time than the ten-day window during which a search warrant is valid for execution under Utah Code section 77–23–205(2). In short, the policy of turning over custody of warrants and affidavits to the police without securing copies for court files is not within the purview of rule 4–205.

¶ 20 Finally, regardless of the statutory requirements, we conclude that the practice followed by the Fourth District Court is sufficiently troubling to warrant the imposition of this court's "inherent supervisory authority over all courts of this state." *State v. Thurman,* 846 P.2d 1256, 1266 (Utah 1993); *see also State v. Wareham,* 772 P.2d 960, 965 (Utah 1989) (invoking supreme court's supervisory power to require bifurcation in the context of criminal trials); *In re Criminal Investigation,* 754 P.2d 633, 642 (Utah 1988) (recognizing that "[t]he courts' inherent su-

3. Respondents admit that the common practice in the Fourth District varies somewhat from the statutory requirement. Although the statute contemplates that law enforcement will return the warrant and related materials to the magistrate, who will then deliver them to the court, magistrates in the Fourth District "typically instruct law enforcement to deliver the documents to the court clerk for keeping."

4. In 2005, the legislature repealed the previous requirements; however, the new language continues to emphasize the importance of maintaining the integrity of the warrant process by requiring remotely communicated search warrants to be served in written form. *See* Utah Code Ann. § 77–23–204 (2006).

5. Similarly, subsection (2) of section 77–23–204, which governed the issuance of telephonic warrants, required that the "sworn oral testimony ... communicated to the magistrate by telephone or other appropriate means ... shall be recorded and transcribed. After transcription, the statement shall be certified by the magistrate and filed with the court." Utah Code Ann. § 77–23–204(2) (repealed 2005). This procedure is consistent with our conclusion that the courts have an obligation to maintain as part of the court records the information upon which warrants are based.

6. The current practice is also inconsistent with section 77–23–209, which required that the magistrate "annex to the depositions and affidavits upon which the search warrant is based, the search warrant, the return, and the inventory." Utah Code Ann. § 77–23–209 (2003) (amended 2005). If the magistrate surrendered to law enforcement control of the material on which the warrant is based, he would be unable to fulfill the requirements of this section with any confidence.

pervisory power is that which is necessary to protect the fundamental integrity of the judicial branch"). The policy of the Fourth District Court is sound only if we may confidently assume that law enforcement always acts with complete honesty, integrity, and competence. Unfortunately, it is much more likely that even the most honest and well-intentioned officer will occasionally make mistakes in handling, preserving, and filing the warrant documents. Were it not so, there would be no need for a warrant requirement at all.

¶ 21 The issues raised by this petition are similar to those that confronted this court in *In re Criminal Investigation.* In that case, this court faced myriad challenges to the constitutionality of the Subpoena Powers Act. 754 P.2d at 636. Among those challenges was the claim that the Act failed to provide for adequate records of subpoenas issued pursuant to the Act. *Id.* at 644. While acknowledging that the Act did not include a provision expressly requiring the maintenance of investigatory records, the court relied on various provisions of the Act suggesting that the legislature had anticipated detailed record-keeping. *Id.* at 653. The court further noted that adequate records were necessary in order for the courts to fulfill their constitutional role of protecting against abuse of subpoenas issued under their authority. *Id.* The court then called upon its inherent supervisory authority to require that all investigations under the Act be fully documented and that "such documentation ... be maintained by the district court authorizing the investigation." *Id.*

¶ 22 We adopt a similar approach here. Giving law enforcement sole custody of all

affidavits and warrants up through the point where the warrant has been executed and a return filed is inherently problematic for at least two reasons. First, it leaves the court without any record of the subpoena or the materials supporting its issuance until after the subpoena is executed and a return filed. Second, it allows for the possibility that affidavits and other court records may be mishandled or even altered without detection. When the records upon which the magistrate acts in issuing a warrant are handled by persons other than court personnel prior to being filed with the court, the court has no basis for confidence in the accuracy, authenticity, or completeness of those documents. In the matter of warrants for the search and seizure of persons or property, more is required. We accordingly require that magistrates issuing search warrants retain in their custody copies of all search warrants issued, as well as the material supporting search warrant applications, rather than surrendering to law enforcement the only copies of such material.

¶ 23 To ensure the integrity of our court records, we have concluded that the courts of this state must retain copies of all search warrants and supporting material. Nevertheless, we are without the information necessary to prescribe the particular procedures to be followed in maintaining and disclosing such records.[7] Those particulars are best addressed by study and examination in the context of our rule-making process. We therefore refer those particulars to our Advisory Committee on the Rules of Criminal Procedure for further consideration.[8]

7. For example, the question of when a search warrant should be available to the public raises particularly thorny issues. A search warrant is issued *ex parte,* without prior notice to individuals who might be affected by the search. *See, e.g., United States v. Matlock,* 415 U.S. 164, 174, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). And the target of a search warrant is not entitled to notice or a copy of the warrant documents between the time of issuance and execution. This process protects the integrity of the criminal investigation and the evidence sought through the search. It also protects the law enforcement officers who execute the search by eliminating the chance of forewarning those who might pose a threat to officer safety. Thus, while an individual may have a right of access to information

regarding a warrant after it has been executed, the courts must be careful to ensure that information regarding a warrant is not released prematurely.

8. Until new rules take effect, we prescribe the following interim procedure: All magistrates must keep copies of any warrants that are issued and the documents supporting law enforcement's request for such warrants. Prior to the filing of a return, parties may access these materials only for good cause pursuant to court order. There will be no changes to the current procedures for accessing these materials in those cases where a return has been filed. Nothing in this interim rule shall be deemed to limit the power of the

¶ 24 Anderson has also requested that we certify this matter as a class action pursuant to rule 23 of the Utah Rules of Civil Procedure. Anderson states that the proposed class would seek and be entitled to the same equitable relief sought by Anderson himself. Inasmuch as this court has exercised its supervisory power to order the relief Anderson seeks, his request for class certification is both unnecessary and moot. It is also inadequately briefed. We accordingly deny Anderson's request for class certification.

 ¶ 25 Finally, Anderson has requested an award of attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988. We decline to consider his request because it was inadequately briefed. The argument in Anderson's principal brief supporting his request for attorney fees is limited to a footnote consisting of two conclusory sentences in which Anderson suggests he is entitled to fees because the practice of the Fourth District Court is "clearly in excess" of its jurisdiction. Such briefing is inadequate. Our rules require

> "not just bald citation to authority but development of that authority and reasoned analysis based on that authority." *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998). As we have noted many times before, "this court is not a depository in which the appealing party may dump the burden of argument and research." *State*

---

issuing magistrate to restrict access to a particular warrant or supporting document following the filing of a return in cases where there is good cause. This simple procedure will maintain the integrity of the warrant system during the period

*v. Gamblin,* 2000 UT 44, ¶ 6, 1 P.3d 1108 (quotations and citations omitted).

*State v. Green,* 2004 UT 76, ¶ 13, 99 P.3d 820.

## CONCLUSION

¶ 26 Utah statutes governing the issuance of search warrants contemplate that the issuing court will maintain reliable records of the warrants and the documents supporting them. We accordingly grant in part Anderson's petition for extraordinary writ and call upon our supervisory power over the courts of this state to require that they retain copies of all warrants issued and the documents supporting the requests for such warrants. We leave to our rule-making process the particular mechanisms for implementing this requirement and managing these records. We deny the remainder of Anderson's petition, including his request for class certification and attorney fees.

¶ 27 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

---

in which the new rules are being drafted, while simultaneously ensuring that court clerks are not suddenly burdened with a barrage of requests to access warrant records.