2009 UT App 73

**STATE of Utah, Plaintiff and Appellee,**

v.

**William Thomas DOMINGUEZ, Defendant and Appellant.**

**No. 20070865–CA.**

Court of Appeals of Utah.

March 19, 2009.

Randall W. Richards, Ogden, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeffrey S. Gray, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., THORNE, Associate P.J., and DAVIS, J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant William Thomas Dominguez was convicted of one count of driving under the influence of alcohol or drugs (DUI), a third-degree felony in violation of Utah Code section 41–6a–502, *see* Utah Code Ann. § 41–6a–502 (2005). He asserts that the evidence against him should have been suppressed, contending that the arresting officer, Trooper Chris Turley, unlawfully obtained a warrant from the magistrate. Specifically, he argues that the magistrate's failure to comply with rule 40 of the Utah Rules of Criminal Procedure violated his Fourth Amendment rights. We agree and reverse.

## BACKGROUND

¶ 2 On June 3, 2007, Trooper Turley stopped Defendant in his automobile at approximately 1:00 a.m. Defendant appeared to be racing his car against another car. While speaking to Defendant, Trooper Turley observed "red, bloodshot, glassy looking eyes" and slurred speech. Trooper Turley checked Defendant's driver license and discovered that it had been revoked for alcohol-related offenses. Trooper Turley arrested Defendant and, during the arrest, smelled alcohol on Defendant's breath. Trooper Turley asked Defendant to submit to breathalyzer and field sobriety tests, but Defendant refused.

¶ 3 After taking Defendant to the police station, Trooper Turley prepared a written affidavit in support of a search warrant authorizing a blood draw. He then telephoned Judge Brent West. Judge West placed Trooper Turley under oath, after which the officer told Judge West "the subject's name, the reason for the stop, [and] all of the clues [he] observed." Trooper Turley read significant portions of his written affidavit to Judge West but did not read every line. After hearing Trooper Turley's statement, Judge

West directed Trooper Turley to sign the affidavit with his own name and also to sign Judge West's name. Trooper Turley followed these directions. The telephone conference was not otherwise recorded.

¶ 4 Defendant was charged with driving under the influence of alcohol, driving with alcohol in his body with a no-alcohol license, driving on a revoked license, driving a vehicle without proof of insurance, and engaging in a speed contest or exhibition. Defendant filed a motion to suppress evidence, arguing that the warrant had not been obtained according to the proper procedures. Defendant did not challenge the probable cause element. At the hearing on the motion to suppress, Trooper Turley testified, but the magistrate did not. Trooper Turley described his telephone conversation with Judge West but not the circumstances leading to Defendant's arrest. The motion to suppress was denied by the court. Defendant then entered a conditional guilty plea to driving under the influence and driving without proof of insurance. Defendant now appeals.

ISSUES AND STANDARDS OF REVIEW

¶ 5 Defendant asks us to consider whether the trial court erred in denying his motion to suppress evidence obtained as a result of the search warrant. Defendant argues that the telephonic warrant did not comply with rule 40 of the Utah Rules of Criminal Procedure and that this alleged violation merits suppression of the evidence. We examine first whether there was an error and, second, whether the error caused harm sufficient to merit suppressing the evidence. The analysis and required application of this rule is a matter of first impression. We review the trial court's interpretation of a rule of procedure for correctness. *See Ostler v. Buhler,* 1999 UT 99, ¶ 5, 989 P.2d 1073.

ANALYSIS

I. The Telephonic Warrant Did Not Comply with Rule 40 of the Utah Rules of Criminal Procedure

¶ 6 Defendant argues that the procedure followed by Trooper Turley and the magis-

trate violated Defendant's Fourth Amendment right to be free from unreasonable searches and seizures, *see* U.S. Const. amend. IV, asserting that it did not comply with the requirements of rule 40 of the Utah Rules of Criminal Procedure. The relevant part of rule 40 states:

> At the time of issuance, the magistrate shall retain and seal a copy of the search warrant, the application and all affidavits or other recorded testimony on which the warrant is based and shall, within a reasonable time, file those sealed documents in court files which are secured against access by the public.

Utah R.Crim. P. 40(i)(1).[1] Defendant contends that, in issuing the warrant telephonically, the magistrate failed to retain, seal, or file the documents, insisting that it must be the *magistrate,* not the *officer,* who complies with rule 40's requirements.

¶ 7 Rule 40(i)(1) was implemented in response to recent guidance from the Utah Supreme Court. *See id.* R. 40(i)(1) Advisory Committee Notes ("(i) Subsection (1) is added in compliance with the order of the Utah Supreme Court in *Anderson v. Taylor,* 2006 UT 79, 149 P.3d 352 (filed December 5, 2006).").

¶ 8 In *Anderson v. Taylor,* 2006 UT 79, 149 P.3d 352, the Utah Supreme Court reviewed the Fourth District Court's customary procedures for issuing search warrants. *See id.* ¶ 1. The Fourth District Court did not retain copies of search warrants or their supporting documentation. *See id.* ¶ 2. Instead,

> after issuing a warrant, the issuing magistrate return[ed] both the warrant and the supporting material to the law enforcement officer seeking the warrant. After the warrant [wa]s executed, the officer deliver[ed] the original warrant, the supporting material, the return, and the inventory of items seized in the search to the magistrate, who then review[ed] it and either fil[ed] it with the court or return[ed] it to

---

1.  " 'Recorded' or 'recording' includes the original recording of testimony, a return or other communication or any copy, printout, facsimile, or other replication that is intended by the person making the recording to have the same effect as the original." Utah R.Crim. P. 40(a)(2).

law enforcement with a request that law enforcement file it with the court.

*Id.* ¶ 2. The supreme court invalidated this practice. *See id.* ¶ 26. We quote liberally:

Giving law enforcement sole custody of all affidavits and warrants up through the point where the warrant has been executed and a return filed is inherently problematic for at least two reasons. First, it leaves the court without any record of the [warrant] or the materials supporting its issuance until after the [warrant] is executed and a return filed. Second, it allows for the possibility that affidavits and other court records may be mishandled or even altered without detection. When the records upon which the magistrate acts in issuing a warrant are handled by persons other than court personnel prior to being filed with the court, the court has no basis for confidence in the accuracy, authenticity, or completeness of those documents. In the matter of warrants for the search and seizure of persons or property, more is required. *We accordingly require that magistrates issuing search warrants retain in their custody copies of all search warrants issued, as well as the material supporting search warrant applications, rather than surrendering to law enforcement the only copies of such material.*

To ensure the integrity of our court records, we have concluded that the courts of this state must retain copies of all search warrants and supporting material.

*Id.* ¶¶ 22–23 (emphasis added). The supreme court indicated that it did not have the authority "to prescribe the particular procedures to be followed in maintaining and disclosing' such records" but instructed the appropriate body to do so. *Id.* ¶ 23. Rule 40(i) was adopted in response and became effective April 30, 2007. *See* Utah R.Crim. P. 40(i)(1) Advisory Committee Note (i).

¶ 9 The State attempts to distinguish *Anderson* by pointing out that *Anderson* did not involve a telephonic warrant and that in the context of a telephone request for a warrant, the court cannot "retain" what it never had. Section (*l*) of rule 40 allows a peace officer to obtain a search warrant remotely, i.e., telephonically, including entering

the magistrate's signature, if so directed by the magistrate. *See* Utah R.Crim. P. 40(*l*)(1), (4). That section further states that "[t]he testimony and content of the warrant shall be recorded . . . by writing or by mechanical, magnetic, electronic, photographic storage or by other means." *Id.* R. 40(*l*)(2). Although the rule does not specify by whom the recording must be made, the State suggests that this can be accomplished by the peace officer. However, subsection (*l*)(5) requires compliance with section (i): "[t]he warrant and recorded testimony shall be retained by and filed with the court pursuant to Section (i)," *id.* R. 40(*l*)(5), which assigns that responsibility to the magistrate, *see id.* R. 40(i). Subsection (*l*)(5) was also amended in response to *Anderson.* Compare *id.* R. 40(*l*) (2008) *with id.* (2006).

¶ 10 Although it is not controlling, the corresponding federal rule offers insight as to how these sections might co-exist. Rule 41(d)(3) of the Federal Rules of Criminal Procedure requires that a magistrate judge, issuing a warrant by telephone, must "make a verbatim record of the conversation with a suitable recording device, if available, or by a court reporter, or in writing." Fed. R.Crim.P. 41(d)(3)(B)(ii). Federal rule 41(e)(3) further requires that the applicant for a search warrant "must prepare a 'proposed duplicate original warrant' and must read or otherwise transmit the contents of that document verbatim to the magistrate judge," and "the magistrate judge must enter those contents into an original warrant." *Id.* R. 41(e)(3)(A), (B).

¶ 11 Because the language at issue was added in direct response to the Utah Supreme Court's desire to ensure "that the issuing court will maintain reliable records of the warrants and the documents supporting them," *Anderson,* 2006 UT 79, ¶ 26, 149 P.3d 352, and since the federal rules explicitly outline a method whereby this may be accomplished in securing a telephonic warrant, *see* Fed.R.Crim.P. 41, we conclude that rule 40(i) of the Utah Rules of Criminal Procedure requires the *magistrate* to make and keep a copy of the search warrant and supporting documents; it is not sufficient for the peace officer alone to retain this information

and subsequently supply it to the court. Accordingly, the warrant at issue in this case did not comply with rule 40 of the Utah Rules of Criminal Procedure.

## II. Reversible Error

¶ 12 We now consider whether this violation merited suppressing the evidence. Under rule 30 of the Utah Rules of Criminal Procedure, "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R.Crim. P. 30(a). Indeed, the State argues that the violation here "constituted nothing more than the failure to perform a ministerial act which did not affect the validity of the search warrant and the search conducted thereunder," *see State v. Anderton,* 668 P.2d 1258, 1262 (Utah 1983).

¶ 13 Federal circuits applying rule 41(c) of the Federal Rule of Criminal Procedure and state courts applying rules similar to that rule have addressed whether evidence obtained pursuant to warrants issued in violation of federal rule 41(c) should be excluded on a case-by-case basis. For example, in *United States v. Rome,* 809 F.2d 665 (10th Cir.1987), the peace officer and the magistrate had several telephone conversations during the course of an afternoon and evening. *See id.* at 666. Only the last of these conversations, the one in which the search warrant was actually issued, was recorded or retained. *See id.* at 665–66. The *Rome* court determined that the error was·not sufficient to justify excluding the evidence obtained via the search warrant, embracing a standard written by the Ninth Circuit:

"Unless there is a clear constitutional violation, non-compliance with Rule 41 [of the Federal Rules of Criminal Procedure] requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the rule."

*Id.* at 669 (quoting *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir.1981)). The *Rome* court determined that "[t]here [was] nothing in the record to suggest that Rome's Fourth Amendment rights were violated [because] [p]robable cause was amply demonstrated in the recorded testimony upon which the search warrant was based." *Id.* at 670. The court did, however, offer this warning:

We do not condone careless police work and lack of preparation, nor do we hold that the failure to understand the rules governing their conduct will excuse law enforcement officers from compliance therewith. We simply hold that in this case, [the peace officer and magistrate] complied with the spirit, if not the letter, of Rule 41(c)(2).

*Id.*

¶ 14 Similarly, in *United States v. Chaar,* 137 F.3d 359 (6th Cir.1998), the Sixth Circuit ruled that a violation of rule 41 of the Federal Rules of Criminal Procedure did not affect the admissibility of evidence. *See id.* at 365. The court there considered federal rule 41(c)(2)(d), which, at the time, required that the magistrate record a telephone call for a search warrant, either by voice recording, stenographic, or longhand verbatim. *See* Fed.R.Crim.P. 41(c)(2)(d) (1993) (amended 2002). In that case, a tape recording was made of the telephone conversation in which the magistrate authorized the search warrant, but the tape was subsequently lost. *See Chaar,* 137 F.3d at 360–61. Nineteen months later, the investigating agent provided an affidavit recalling the facts. *Id.* at 360 n. 1, 366. In determining that the error did not merit reversal, the *Chaar* court noted that "there was significant evidence supporting probable cause in this case." *Id.* at 364. The court relied on *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), for the "good faith exception" to search warrant requirements. *See Chaar,* 137 F.3d at 364. The Sixth Circuit has summarized *Leon* as follows:

The exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.

[Leon] noted four specific situations where the good faith reliance exception would *not* apply: (1) where the supporting affidavit contained knowing or reckless falsity; (2)

where the issuing magistrate failed to act in a neutral and detached fashion, and served merely as a rubber stamp for the police; (3) where the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause, or in other words, where the warrant application was supported by [nothing] more than a 'bare bones' affidavit; and (4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*Id.* (emphasis and alterations in original) (quoting *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir.1993)). The Sixth Circuit's stated policy was that " '[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.' We do not exclude evidence, absent constitutional violations, unless the exclusion furthers the purpose of the exclusionary rule." *Id.* at 361 (additional citations omitted) (quoting *United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405). *But see Chaar*, 137 F.3d at 366 (Dowd, J., dissenting) (finding the violation "to be more than a mere 'technical' violation" because "the only evidence of the conversation presented to the district court at the suppression hearing was the affidavit of the affiant, executed nineteen months after the issuance of the warrant" and there was no testimony whatsoever by the magistrate judge).

¶ 15 By contrast, in *State v. Cook*, 498 N.W.2d 17 (Minn.1993), the Minnesota Supreme Court excluded evidence based on a violation of the search warrant rule. *See id.* at 22. Minnesota followed the federal rules for securing telephonic search warrants. *See id.* at 19. Although the magistrate authorized the warrant by phone, "[the] telephone conversation was not recorded. The officer did not read his statement from a prepared written application or from any notes, nor, apparently, did the judge make any significant notes of what was said over the telephone." *Id.* at 19. The Minnesota Supreme Court concluded that the warrant was not valid, stating,

The purpose of these procedures is to have a record made contemporaneously with the authorization of the search warrant that will show both probable cause for a search and a reasonable need for the warrant to be issued telephonically, so that later, if need be, there is a basis for challenging the warrant that is not dependent solely on after-the-fact recollections.

*Id.* at 20. The court affirmed the lower courts' decisions that the evidence must be suppressed. *Id.* at 18.

¶ 16 Similarly, in *Volz v. State*, 773 N.E.2d 894 (Ind.Ct.App.2002), the Indiana Court of Appeals invalidated a search warrant that had been recorded on a faulty tape recorder when the recorder did not record the entire conversation. *See id.* at 896–97. The Indiana statute in effect required that a magistrate issuing a telephonic search warrant "shall record the conversation on audio tape and order the court reporter to type or transcribe the recording for entry in the record." *See* Ind.Code Ann. § 35–33–5–8(b) (LexisNexis 1990). After learning that their telephone conversation had not been recorded, the peace officer and magistrate testified at a hearing to reconstruct their conversation. *See Volz*, 773 N.E.2d at 896. The court held this was not sufficient because without a recording, "neither the validity of the warrant nor [the officer's] reasonable belief that the warrant was valid is capable of independent verification through judicial review." *Id.* at 899. Accordingly, the court reversed the matter and instructed the trial court to grant the defendant's motion to suppress. *See id.*

■ ¶ 17 Because this is an issue of first impression, we are left to decide for the first time how strictly rule 40 should be enforced in Utah. Although we recognize that Defendant has not challenged the warrant on probable cause grounds or otherwise contested it,[2] we take *Anderson*'s mandate seriously. Indeed, without a recording, any attempt by Defendant to challenge probable cause may require him to forfeit his Fifth Amendment right to remain silent. We as-

---

**2.** Defendant does not argue that the officer's reading of only portions of his affidavit to the magistrate invalidated the search warrant. We,
however, believe that selective communication of the affidavit may be problematic.

sume that the Utah Supreme Court wishes this rule to be followed strictly now that it has been implemented. *Anderson* offered clear public policy support for its mandate, and the result of the Fourth District Court's procedure had no different effect than the result here. Similarly, the potential problems of mishandling or alteration identified in *Anderson* also exist in telephonic warrant requests. We interpret *Anderson* to mean that the Utah Supreme Court intended to take a strong position on the issue. Thus, rule 40 is unambiguous in setting forth the courts' responsibility when issuing search warrants, including those sought telephonically. Accordingly, we reverse and instruct the trial court to grant Defendant's motion to suppress.[3]

## CONCLUSION

¶ 18 Rule 40(i)(1) of the Utah Rules of Criminal Procedure requires that magistrates, not solely peace officers, "retain and seal a copy of the search warrant, the application and all affidavits or other recorded testimony on which the warrant is based," Utah R.Crim. P. 40(i)(1). The magistrate in this case did not do so. We conclude this was reversible error and reverse and remand for further proceedings in accordance with this opinion.

¶ 19 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and JAMES Z. DAVIS, Judge.

---

**3.** We note that there may be sufficient evidence without the excluded results of the blood draw to nevertheless support a conviction.