2011 UT 11

STATE of Utah, Plaintiff and Petitioner,

v.

William Thomas DOMINGUEZ, Defendant and Respondent.

No. 20090410.

Supreme Court of Utah.

March 1, 2011.

---

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Randall W. Richards, Ogden, for defendant.

Justice LEE, opinion of the Court:

¶ 1 The State challenges a decision of the court of appeals reversing the district court's denial of William Dominguez's motion to suppress evidence obtained pursuant to a warrant authorizing a blood draw. The court of

appeals held that evidence obtained from the blood draw should have been suppressed because the warrant-issuing magistrate failed to comply with Rule 40 of the Utah Rules of Criminal Procedure when granting a telephonic search warrant. We reverse on the ground that Dominguez has not demonstrated that the magistrate's Rule 40 violation affected his substantial rights.

## I

¶ 2 Shortly after 1:00 a.m. on June 3, 2007, Utah Highway Patrol Trooper Chris Turley pulled William Dominguez over for racing with another car. In speaking with Dominguez, Turley noticed that Dominguez "had red, bloodshot, glassy looking eyes" and "that his speech was noticeably slurred." When a records check revealed that Dominguez's driver's license had been revoked for alcohol-related offenses, Turley arrested him. Turley reported that during the course of the arrest he smelled a "strong odor" of alcohol on Dominguez's breath. Turley asked Dominguez to blow into a portable breathalyzer, but Dominguez refused. He also refused to submit to field sobriety tests.

¶ 3 After transporting Dominguez to the police station, Turley prepared a written affidavit in support of a search warrant authorizing a blood draw. Shortly after 2:00 a.m., Turley telephoned Judge Brent West and informed him of the reason for the stop, "all of the clues [he] observed," and the arrest. After being placed under oath, Turley read the probable cause statement contained in the written affidavit. Turley testified that he did not read every line of the affidavit, but that he read the following portion "establish-

ing the grounds for issuance of [the] search warrant":

On June 3[,] 2007, at approximately [1:02 a.m.], I observed a red Honda Civic ... racing a silver passenger car. The vehicle was stopped by the activation of my emergency lights. I approached the vehicle and William Dominguez was in the driver seat not wearing a seat belt. Dominguez had red, bloodshot, glassy looking eyes. As I spoke with Dominguez, I noticed that his speech was noticeably slurred. I conducted a records check on Dominguez using his name and date of birth. This information revealed that Dominguez had a[n] alcohol[-]revoked license and was an alcohol[-]restricted driver. Dominguez denied consuming any alcohol. I placed Dominguez under arrest and could smell a strong odor of an alcohol beverage coming from his breath in the open air.

I requested Dominguez blow into a portable breath tester[;] however he refused to blow. When asked if he would allow me to conduct [a] field sobriety test, Dominguez said no and that he had been through this before. Dominguez refused to submit to any DUI field sobriety tests. I read Dominguez his DUI admonitions [1] advising him of the consequences of not submitting to my tests. Dominguez still would not cooperate and refused to give a chemical test.

Dominguez has at least 4 prior DUI convictions in the past 10 years and he is currently on parole for a felony DUI conviction.

At the direction of the magistrate, Turley signed the magistrate's name to the warrant authorizing the blood draw at 2:27 a.m.[2]

---

**1.** "A person operating a motor vehicle" in Utah "is considered to have given the person's consent to a chemical test or tests of the person's breath, blood, urine, or oral fluids" to determine whether the individual is operating the vehicle under the influence of drugs or alcohol. UTAH CODE ANN. § 41–6a–520(1)(a) (2010). A police officer requesting such tests

  shall warn a person that refusal to submit to the test or tests may result in revocation of the person's license to operate a motor vehicle, a five or ten-year prohibition of driving with any measurable or detectable amount of alcohol in the person's body depending on the person's prior driving history, and a three-year prohibi-

tion of driving without an ignition interlock device if the person:
  (i) has been placed under arrest;
  (ii) has then been requested by a peace officer to submit to any one or more of the chemical tests under Subsection (1); and
  (iii) refuses to submit to any chemical test requested.
Id. § 41–6a–520(2)(a).

**2.** "Upon approval, the magistrate may direct the peace officer ... requesting a warrant from a remote location to sign the magistrate's name on a warrant at a remote location." UTAH R.CRIM. P. 40(l)(4).

¶ 4 The magistrate did not obtain a copy of the affidavit from Turley. Nor did the magistrate make or retain a copy of the search warrant.

¶ 5 Dominguez was charged with driving under the influence of alcohol, ·driving with alcohol in his body with a no-alcohol license, driving on a revoked license, driving a vehicle without proof of insurance, and engaging in a speed contest or exhibition. Dominguez filed a motion to suppress evidence, arguing that the warrant had been issued in violation of Rule 40(i)(1) of the Utah Rules of Criminal Procedure, which requires a magistrate, "[a]t the time of issuance, . . . [to] retain and seal a copy of the search warrant, the application and all affidavits or other recorded testimony on which the warrant [was] based." Dominguez did not challenge the probable cause element or the truth of any of the evidence contained in Turley's affidavit. *See State v. Dominguez*, 2009 UT App 73, ¶ 17, 206 P.3d 640.

¶ 6 The district court denied Dominguez's motion to suppress, and Dominguez entered a conditional plea to driving under the influence. Dominguez appealed.

¶ 7 The court of appeals reversed. It treated the appeal as presenting two questions: (1) "whether there was an error" in the application of Rule 40(i)(1), and (2), if so, "whether the error caused harm sufficient to merit suppressing the evidence." *Id.* ¶ 5.

¶ 8 As to the first question, the court of appeals concluded that the magistrate's failure to "make and keep a copy of the search warrant and supporting documents" violated Rule 40. *Id.* ¶ 11. As to the second question, the court noted that Rule 40(i)(1) had been implemented in direct response to this court's decision in *Anderson v. Taylor*, which mandated retention and filing of warrants and warrant-application materials and testimony by the warrant-issuing magistrate. 2006 UT 79, ¶¶ 22–23, 149 P.3d 352. The court then "assume[d] that the Utah Supreme Court wishes this rule to be followed strictly now that it has been implemented" and accordingly held that a violation of Rule 40(i)(1) justifies suppression. *Dominguez*, 2009 UT App 73, ¶ 17, 206 P.3d 640.

¶ 9 On certiorari, we review the decision of the court of appeals for correctness. *State v. Visser*, 2000 UT 88, ¶ 9, 22 P.3d 1242.

II

¶ 10 Rule 40(i)(1) requires the magistrate, "[a]t the time of issuance" of a search warrant, to "retain and seal a copy of the search warrant, the application and all affidavits or other recorded testimony on which the warrant is based" and to "file those sealed documents in court files which are secured against access by the public." UTAH R.CRIM. P. 40(i)(1). This rule implements our holding in *Anderson v. Taylor*, 2006 UT 79, 149 P.3d 352. In *Anderson*, we reviewed a district court's practice for issuing search warrants. Prior to *Anderson*, the district court customarily did not retain copies of search warrants or their supporting documentation. Instead,

> after issuing a warrant, the issuing magistrate return[ed] both the warrant and the supporting material to the law enforcement officer seeking the warrant. After the warrant [was] executed, the officer deliver[ed] the original warrant, the supporting material, the return, and the inventory of items seized in the search to the magistrate, who then review[ed] it and either file[d] it with the court or return[ed] it to law enforcement with a request that law enforcement file it with the court.

*Id.* ¶ 2.

¶ 11 In *Anderson*, we found this practice "sufficiently troubling" to warrant the exercise of our "inherent supervisory authority over all courts of this state." *Id.* ¶ 20 (internal quotation marks omitted). We accordingly held that "magistrates issuing search warrants" are required to "retain in their custody copies of all search warrants issued, as well as the material supporting search warrant applications, rather than surrendering to law enforcement the only copies of such material." *Id.* ¶ 22.

¶ 12 We were concerned in *Anderson* with "[g]iving law enforcement sole custody of all affidavits and warrants up through the point where the warrant has been executed and a return filed," for two reasons:

First, it leaves the court without any record of the [warrant] or the materials supporting its issuance until after the [warrant] is executed and a return filed. Second, it allows for the possibility that affidavits and other court records may be mishandled or even altered without detection. When the records upon which the magistrate acts in issuing a warrant are handled by persons other than court personnel prior to being filed with the court, the court has no basis for confidence in the accuracy, authenticity, or completeness of those documents.

*Id.*

¶ 13 Despite our discomfort with the district·court's prior practice, we declined in *Anderson* "to prescribe the particular procedures to be followed in maintaining and disclosing such records." *Id.* ¶ 23. Nor did we provide a remedy in the event a magistrate fails to retain warrant records. Instead, we referred the matter to our Advisory Committee on the Rules of Criminal Procedure. *Id.* The committee proposed Rule 40(i), which we adopted on April 30, 2007, less than five months after our decision in *Anderson. See* UTAH R.CRIM. P. 40(i)(1) advisory committee's note (i). In so doing, we left in place other provisions of Rule 40, including a provision that allows for remotely communicated search warrants, like the one requested by Officer Turley,[3] and requirements that the "testimony and content of the warrant . . . be recorded"[4] and "be retained by and filed with the court."[5]

¶ 14 The State argues that the recording requirement of Rule 40(*l*)(2) was satisfied when Trooper Turley reduced the search warrant affidavit to writing, because a recording "includes the *original* recording of

testimony," *id.* 40(a)(2) (emphasis added), and may be "by writing," *id.* 40(*l*)(2). The State further argues that the availability of a telephonic warrant in Rule 40(*l*) implicitly excused compliance with Rule 40(i) because magistrates generally have no means of retaining and documenting the warrant and affidavit when they are contacted at home in the middle of the night. *Anderson* did not address telephonic warrants, leaving the drafters of Rule 40(i), the State argues, with no clear method of reconciling them with this court's retention mandate. ·

¶ 15 The court of appeals acknowledged that Rule 40(*l*)(2) "does not specify by whom the recording must be made." *Dominguez,* 2009 UT App 73, ¶ 9, 206 P.3d 640. The court noted, however, that Rule 40(*l*)(5) "requires compliance with" Rule 40(i), and Rule 40(i)(1) assigns the responsibility of retaining and filing recorded testimony to the court. *Id.* Accordingly, the court concluded that Rule 40(i) "requires the *magistrate* to make and keep a copy of the search warrant and supporting documents," including recorded testimony. *Id.* ¶ 11. Moreover, the court resolved that "it is not sufficient for the peace officer alone to retain this information and subsequently supply it to the court." *Id.*

¶ 16 We agree with the court of appeals that it is insufficient for the officer to retain search-warrant materials only to subsequently provide them to the court. This does not resolve the question, however, of whether an officer's affidavit could qualify as a recording under Rule 40(a)(2), assuming, of course, that the officer provides the affidavit to the magistrate "[a]t the time of issuance" of the search warrant. We need not determine that question in this case. Regardless of whether Turley's written affidavit satisfies the record-

---

3. · Rule 40(*l*)(1) of the Utah Rules of Criminal Procedure provides:

When reasonable under the circumstances, a search warrant may be issued upon sworn or affirmed testimony of a person who is not in the physical presence of the magistrate, provided the magistrate is satisfied that probable cause exists for the issuance of the warrant. All communication between the magistrate and the peace officer or prosecuting attorney requesting the warrant may be remotely transmitted by voice, image, text, or any combination of those, or by other means.

4. Rule 40(*l*)(2) of the Utah Rules of Criminal Procedure provides: "All testimony upon which the magistrate relies for a finding of probable cause shall be on oath or affirmation. The testimony and content of the warrant shall be recorded. Recording shall be by writing or by mechanical, magnetic, electronic, photographic storage or by other means."

5. *Id.* 40(*l*)(5).

ing requirement of Rule 40(a)(2), the magistrate did not retain it or any warrant-application materials as required by Rule 40(i)(1). All such materials were retained, instead, by Trooper Turley. We were concerned in *Anderson* with allowing a police officer to retain the only copies of warrant-application materials, including recorded testimony. With that concern in mind, we adopted Rule 40(i)(1), which requires "the *magistrate*," not the officer seeking the warrant, to "retain and seal a copy of the search warrant, the application and all affidavits or other recorded testimony on which the warrant is based." UTAH R.CRIM. P. 40(i)(1) (emphasis added). Because Rule 40 draws no distinction between telephonic and in-person warrants and because the magistrate did not retain any warrant materials, the warrant in this case was not issued in compliance with the retention requirement of Rule 40(i)(1).

### III

¶ 17 Our finding of error still leaves open the question of the appropriate remedy. That question is not resolved by *Anderson,* which addressed only the substance of the retention requirement and not the remedy for its violation. The remedy of suppression is not required in this case under the Fourth Amendment to the United States Constitution or under state law. We accordingly reverse the determination of the court of appeals requiring suppression of the results of Dominguez's toxicology test.

### A

■ ¶ 18 " '[W]hether or not a search is reasonable within the meaning of the Fourth Amendment' ... has never 'depend[ed] on the law of the particular State in which the search occurs.' " *Virginia v. Moore,* 553 U.S. 164, 172, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (first and third alterations in original) (quoting *California v. Greenwood,* 486 U.S. 35, 43, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)). "A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id.* at 174, 128 S.Ct. 1598;

*see also State v. Harker,* 2010 UT 56, ¶ 20, 240 P.3d 780 ("[A] *state law* requiring an officer's presence does not impact the constitutionality of such an arrest." (emphasis added)). Moreover, not all constitutional errors trigger exclusion: "the exclusionary rule is designed to deter *police* misconduct rather than to punish the errors of judges and magistrates." *United States v. Leon,* 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (emphasis added). Thus, this case implicates two questions under the Fourth Amendment: Did the magistrate's failure to retain copies of the warrant and its supporting materials (1) violate the Fourth Amendment (2) such that suppression is required?

■ ¶ 19 Dominguez argues that the warrant-retention requirements of Rule 40(i)(1) are compelled by the Fourth Amendment, and that the magistrate's failure to retain the warrant materials in this case violated the Fourth Amendment and triggered the exclusionary rule. Dominguez fails to cite any authority for the proposition that the retention requirement articulated in *Anderson* and adopted in Rule 40 is mandated by the Fourth Amendment. We decline to so hold now. The Fourth Amendment's protection "against unreasonable searches and seizures" encompasses the core requirements of a reasonable search and of probable cause for an arrest. *See New Jersey v. T.L.O.,* 469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) ("[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable...."); *State v. Moreno,* 2009 UT 15, ¶ 22, 203 P.3d 1000 ("[R]easonableness is the touchstone of the constitutionality of a governmental search." (internal quotation marks omitted)). Individual states may adopt "additional protections" or prophylactic measures aimed at safeguarding the values advanced by the Fourth Amendment, but such rules do not alter the federal constitutional calculus. *Moore,* 553 U.S. at 171, 128 S.Ct. 1598; *see also Whren v. United States,* 517 U.S. 806, 815, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (Fourth Amendment's limitations on seizure by plainclothes officers are not "so variable" as to "turn upon" requirements of state or local rules). The retention require-

ment of our Rule 40 is a prophylactic rule of this court's making, not a universal requirement of federal constitutional magnitude. Even assuming for the sake of argument that the Fourth Amendment itself somehow required retention (and we know of no basis for so holding), suppression still would not be required. As noted above, "[t]he exclusionary rule was crafted to curb police ... misconduct," not the sort of judicial misstep implicated in this case. *Herring v. United States,* 555 U.S. 135, 129 S.Ct. 695, 701, 172 L.Ed.2d 496 (2009).

¶ 20 Here, Dominguez has alleged no misconduct on the part of Trooper Turley. He complains only that the magistrate failed to comply with Rule 40(i)(1). Everything Turley did was authorized by the rules: securing a telephonic warrant, UTAH R.CRIM. P. 40(*l*)(1); signing the magistrate's name to the warrant, *id.* 40(*l*)(4); and filing a return the next morning, *id.* 40(g).[6] Dominguez has not asserted that Turley was even aware that the magistrate was not recording the warrant application. For these reasons, we have no reason to conclude that Turley did anything warranting suppression under the Fourth Amendment, and no basis for imposing the strong remedy of suppression for a magistrate's failure to comply with the prophylactic requirements of Rule 40.

**B**

¶ 21 Under Rule 30(a) of the Utah Rules of Criminal Procedure, "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." We applied this rule in *State v. Anderton,* 668 P.2d 1258 (Utah 1983), where, as here, a magistrate had committed error in the issuance of a search warrant. "[I]n the absence of any contention on the part of [the] defendants" in *Anderton* that the magistrate's error "in any way infringed upon their substantial rights," we found that we were "obliged to disregard the 'defect' in the affidavit by reason of the content of Rule 30." *Id.* at 1261–62. We concluded that the magistrate's error therefore "constituted nothing more than the failure to perform a ministerial act which did not affect the validity of the search warrant and the search conducted thereunder." *Id.* at 1262.

¶ 22 Elsewhere, we have construed Rule 30(a) to foreclose reversal of a conviction "unless the error is *substantial* and *prejudicial* in the sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant." *State v. Johnson,* 771 P.2d 1071, 1073 (Utah 1989) (emphases added). Considering the uncontested facts provided in Trooper Turley's affidavit, "there is no reasonable likelihood the result would have been different," *id.,* had the magistrate complied with the retention requirement of Rule 40(i)(1). Accordingly, we hold that suppression is not appropriate in this case.

¶ 23 This conclusion is consistent with federal case law examining judicial error under the federal counterpart to Rule 40, Federal Rule of Criminal Procedure 41. The vast majority of federal courts that have examined Rule 41 violations have concluded that suppression for judicial error in the application of Rule 41 is not warranted absent a showing of prejudice or evidence of intentional and deliberate disregard of a provision of the rule by police.[7]

---

**6.** Rule 40(g) of the Utah Rules of Criminal Procedure provides: "The officer, after execution of the warrant, shall promptly make a signed return of the warrant to a magistrate of the issuing court and deliver a written or recorded inventory of anything seized, stating the place where it is being held."

**7.** *See United States v. Antrim,* 389 F.3d 276, 282 (1st Cir.2004) ("[A] defendant may suppress evidence *only if* [Rule 41] noncompliance caused him demonstrable legal prejudice ... or *if* police noncompliance was deliberate and in bad faith." (internal quotation marks omitted)); *United States v. Nichols,* 344 F.3d 793, 799 (8th Cir. 2003) ("Where executing officers fail to abide by the dictates of Rule 41, suppression is only required if a defendant can demonstrate prejudice."); *United States v. Lipford,* 203 F.3d 259, 270 (4th Cir.2000) ("Absent a demonstration of prejudice or bad faith ... suppression of evidence is not the proper remedy for a violation of [Rule 41]."); *United States v. Chaar,* 137 F.3d 359, 362 (6th Cir.1998) ("[S]uppression is an appropriate remedy only when the violation is either of constitutional dimensions (*i.e.* the search became constitutionally unreasonable), is prejudicial, or is intentional."); *United States v. Hugoboom,* 112 F.3d 1081, 1087 (10th Cir.1997) ("Unless a clear constitutional violation occurs,

¶ 24 Dominguez cites only one federal case, *United States v. Shorter*, 600 F.2d 585 (6th Cir.1979), for the proposition that a magistrate's error during the warrant process demands suppression. In *Shorter*, the United States Court of Appeals for the Sixth Circuit held that exclusion was the proper remedy for a judge's failure to "immediately" (as then required by Rule 41(c)(2)(D)[8]) administer the oath on a telephonic warrant request before hearing the officer's testimony. 600 F.2d at 589. (The judge in *Shorter* administered the oath after the officer gave his testimony. *Id.* at 588.) But *Shorter* suppression applies only in the oath context. In all other areas of Rule 41 noncompliance, the Sixth Circuit has since joined the generally accepted approach that unless a substantial right is infringed or prejudice results, exclusion is an improper remedy. *See Chaar*, 137 F.3d at 362.

¶ 25 Dominguez cites five cases from other jurisdictions in support of his position that a Rule 40(i)(1) violation requires suppression: *Arizona v. Boniface*, 26 Ariz.App. 118, 546 P.2d 843 (1976); *Bowyer v. Superior Court*, 37 Cal.App.3d 151, 111 Cal.Rptr. 628 (1974); *Volz v. State*, 773 N.E.2d 894 (Ind.Ct.App. 2002); *State v. Cook*, 498 N.W.2d 17 (Minn. 1993); and *State v. Reep*, 161 Wash.2d 808, 167 P.3d 1156 (2007). Two of these cases, *Reep* and *Boniface*, required suppression primarily because of clear constitutional violations (lack of particularity). These cases say nothing, however, about whether suppression is the appropriate remedy for the sort of

stand-alone, non-constitutional rule violation at issue here.[9] Dominguez's other state cases are not persuasive. In both *Volz* and *Cook*, the respective courts recognized that a magistrate's failure to record a probable cause statement may be excused so long as a substantial contemporaneous record, as was made by Trooper Turley in this case, has been made by the officer requesting the warrant. *Volz*, 773 N.E.2d at 898; *Cook*, 498 N.W.2d at 21–22. Notably, the *Cook* court emphasized that, in addition to magistrate error, the *police officer* had failed to record his telephone conversation with the magistrate, as required by state law. The *Cook* court thus ordered suppression "to persuade *police officers*," not magistrates, "to follow the rules and to act lawfully when searching and seizing private property." 498 N.W.2d at 20 (emphasis added). Finally, the telephonic warrant in *Bowyer* violated state law because neither the warrant nor any of the warrant-application materials were ever reduced to writing. 111 Cal.Rptr. at 636. In holding that the error required suppression, the court reasoned that all "constitutional and statutory requirement[s] must be fully met, including all formalities required by statute, before a valid search warrant may issue." *Id.* (internal quotation marks omitted). Utah Rule 30(a), in contrast, does not require suppression in all instances of error, but instead compels us to "disregard" any "error, defect, irregularity or variance which does not affect the substantial rights of a party."

noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." (emphases and internal quotation marks omitted)); *United States v. Martinez–Zayas*, 857 F.2d 122, 136 (3d Cir.1988) (same); *United States v. Stockheimer*, 807 F.2d 610, 613 (7th Cir.1986) (same); *United States v. Loyd*, 721 F.2d 331, 333 (11th Cir.1983) (per curiam) (same); *United States v. Marx*, 635 F.2d 436, 441 (5th Cir.1981) (same); *United States v. Stefanson*, 648 F.2d 1231, 1235–36 (9th Cir.1981) (same); *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir.1975) (same); *see also United States v. Richardson*, 943 F.2d 547, 550 (5th Cir.1991) ("[I]n the absence of an allegation that the magistrate abandoned his neutral and de-

tached role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." (internal quotation marks omitted)).

8. The word "immediately" has since been removed from the rule. *See* Fed.R.Crim.P. 41(d)(3)(B).

9. *See Reep*, 167 P.3d at 1157 (noting that a warrant was "invalid" because it was not recorded as required by state law, but requiring suppression for a Fourth Amendment violation, not the rule violation); *Boniface*, 546 P.2d at 844–46 (noting that a rule violation provided "additional grounds," on top of a Fourth Amendment violation, for invalidating a warrant).

¶ 26 This case ultimately is more like the federal cases requiring prejudice to trigger suppression. There is no basis for a finding that without the error under Rule 40 there is "a reasonable likelihood of a more favorable result for the defendant." *State v. Hutchison,* 655 P.2d 635, 637 (Utah 1982).

¶ 27 Dominguez has not challenged the veracity of Trooper Turley's affidavit, in which Turley described his reasons for stopping and arresting Dominguez: Dominguez's racing with another driver; his "red, bloodshot, glassy looking eyes"; his slurred speech; his alcohol-odorous breath; his history of alcohol-related offenses; and his refusal to submit to a breath test. As the United States Supreme Court has noted, "[t]here is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Given this unchallenged presumption, we have little trouble concluding that the evidence described in Turley's affidavit constitutes probable cause justifying issuance of a search warrant authorizing a blood draw.[10]

¶ 28 Instead of challenging Turley's affidavit, Dominguez argues that suppression is warranted because the Rule 40 violation deprived him of the ability to meaningfully evaluate "the existence or nonexistence of prejudice." At bottom, Dominguez complains that he has no way of knowing what, if anything, to challenge, and that we accordingly should suppress the evidence seized as a result of the warrant. Yet Dominguez was hardly without options. If he believed the affidavit was inaccurate, contained false statements, or had been tampered with, he could have sought a hearing as provided by *Franks v. Delaware. See* 438 U.S. at 171–72, 98 S.Ct. 2674; *see also State v. Nielsen,* 727 P.2d 188, 192–93 (Utah 1986) (applying *Franks* ). At such a hearing, Dominguez could have testified on his own behalf, cross-examined Trooper Turley, or called the magistrate to elicit testimony demonstrating inaccuracies in the affidavit.

■ ¶ 29 In testifying at a *Franks* hearing, Dominguez would not have had to "forfeit his Fifth Amendment right to remain silent," as the court of appeals concluded. *State v. Dominguez,* 2009 UT App 73, ¶ 17, 206 P.3d 640. In fact, the law is well settled that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). "Without this rule, a defendant would have to surrender his Fifth Amendment privilege against self-incrimination in order to assert a valid Fourth Amendment claim." *State v. Hansen,* 2002 UT 125, ¶ 49 n. 4, 63 P.3d 650.

¶ 30 Because Dominguez made no attempt to challenge the affidavit, he implicitly conceded its truth. "[I]n the absence of any contention" that the magistrate's error "in any way infringed upon [Dominguez's] substantial rights," we are "obliged to disregard" the error "by reason of the content of Rule 30." *Anderton,* 668 P.2d at 1261–62. As the Sixth Circuit put it: "the fact that there was no testimony to refute" Trooper Turley's affidavit, from the magistrate or anyone present during the arrest, "redounds to [Dominguez's] detriment." *Chaar,* 137 F.3d at 363. Dominguez "was free to call any or all of these people as witnesses; he may well have believed that such testimony would not be helpful to him, and we will not strain to disagree." *Id.* Moreover, "despite having a full and fair opportunity to cross-examine" Trooper Turley at the suppression hearing, Dominguez "did not . . . question [Turley's] version of the events surrounding the search and arrest." *Id.* He thus "made no attempt to show that he was prejudiced" by the Rule 40(i)(1) violation, "and adduced no evidence to suggest that [Turley's] account was incorrect." *Id.* Dominguez thus has failed to establish that his substantial rights were affect-

---

**10.** *See State v. Rodriguez,* 2007 UT 15, ¶ 59, 156 P.3d 771 (finding evidence of probable cause "overwhelming" where officer found vodka bottle at scene and noted defendant's "slurred speech, bloodshot eyes, and odor of alcohol");

*Cavaness v. Cox,* 598 P.2d 349, 352 (Utah 1979) ("Suspects have no constitutional right to refuse a test designed to produce physical evidence in the form of a breath sample . . . ." (internal quotation marks omitted)).

ed in the sense that the outcome would have been different but for the magistrate's failure to comply with Rule 40(i)(1). Accordingly, there is no basis for the strong medicine of suppression as a remedy for the rule violation in this case.

## IV

¶ 31 The magistrate's Rule 40(i)(1) violation does not require suppression in this case under federal or state law. Accordingly, we reverse the judgment of the court of appeals.

¶ 32 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice LEE's opinion.