2011 UT App 39

STATE of Utah, Plaintiff and Appellee,

v.

Michael Duke TANNER, Defendant and Appellant.

No. 20080043–CA.

Court of Appeals of Utah.

Feb. 3, 2011.

Margaret P. Lindsay, Spanish Fork, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and ROTH.

## OPINION

THORNE, Judge:

¶ 1 Defendant Michael Duke Tanner appeals from convictions on five counts of pos-

session of a controlled substance with intent to distribute, *see* Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.2010), arguing that the trial court abused its discretion when it denied his motion to compel discovery. We affirm.

## BACKGROUND

¶ 2 On October 3, 5, 12, 19, and 24 of 2006, Defendant sold methamphetamine to a confidential informant (the CI). For each buy, Officer Mark Troxell, a Provo City officer assigned to the Utah County Major Crimes Task Force (Task Force) to supervise a team of detectives conducting drug investigations, witnessed the CI call Defendant to arrange each drug purchase. Troxell and other Task Force officers met the CI prior to each buy to give him "buy money" and to search him and his car for drugs. Troxell and other Task Force officers observed the CI drive to Defendant's house and enter Defendant's residence. After each buy, the Task Force officers met the CI at a nearby location where the CI gave the drugs to the officers.

¶ 3 On March 14, 2007, the State charged Defendant by an amended information with five counts of distribution of a controlled substance in a drug free zone.[1] Prior to trial, Defendant filed several discovery requests seeking various items of evidence, including (1) a copy of the return of search warrant issued on October 18, 2006, and executed at Defendant's residence on October 25; (2) a copy of any and all probable cause affidavits in support of any search warrant issued between January 2006 and January 2007 on Defendant's residence and the return of the corresponding search warrant; (3) a text copy of the Task Force's procedure for controlled buys; and (4) a text copy of the procedure for using voluntary or paid confidential informants. On September 25, 2007, Defendant filed a motion to compel discovery of these items. After oral argument on Defendant's motion to compel, the trial court denied the motion.

---

1. In that same information, the State charged Defendant with two counts of possession of a controlled substance, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2010), that Defendant had allegedly possessed on February 3, 2007. Defendant moved to sever the February possession counts from the October distribution counts. The State agreed, and the trial court severed the possession counts from the distribution counts.

¶ 4 A jury trial was held on the distribution charges. The jury found Defendant guilty on all five of the distribution charges. Defendant now appeals the trial court's decision to deny his motion to compel.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 5 Defendant asserts that the trial court erred by refusing to grant his motion to compel discovery because the materials requested were necessary for the proper investigation of the CI's credibility and contained potentially exculpatory or mitigating evidence. "Because trial courts have broad discretion in matters of discovery, this issue is reviewed for abuse of discretion." *Gardner v. Board of Cnty. Comm'rs*, 2008 UT 6, ¶ 51, 178 P.3d 893 (internal quotation marks omitted).

## ANALYSIS

■ ¶ 6 Defendant argues that the trial court erred in denying his motion to compel discovery and has frustrated his search for truth upon which a just judgment should be predicated. Specifically, Defendant argues that the trial court improperly applied a relevance analysis under rules 401 through 403 of the Utah Rules of Evidence to the good cause requirement under rule 16(a)(5) of the Utah Rules of Criminal Procedure. *See* Utah R.Crim. P. 16(a)(5). Rule 16 governs discovery in criminal cases and requires the prosecutor to disclose specific listed information that the prosecutor has knowledge of and "any other item of evidence which the court determines *on good cause shown should be made available to the defendant in order for the defendant to adequately prepare his defense." Id.* (emphasis added). "A trial court is granted broad discretion to admit or deny discovery under this rule." *State v. Mickelson*, 848 P.2d 677, 687 (Utah Ct.App.1992).

■ ¶ 7 Defendant asserts that he satisfied the good cause requirement by informing the trial court that the returns of search warrants and probable cause affidavits applicable to the search of his house were necessary to explore the potential for impeachment,[2] potentially contained exculpatory or mitigating information, and that these items as well as the materials requested from the Utah County Major Crimes Task Force were necessary for the proper preparation of a defense.[3] In the instant case, the trial court determined that Defendant had not met the good cause standard because the various returns of search warrant and probable cause affidavits requested were not relevant or admissible. The trial court reasoned that "[i]n terms of a 401, [402,] and [403] analysis, this is a waste of the jury's time, and it's not likely to bring us to evidence which is helpful or admissible." Regarding Defendant's request for a text copy of the Task Force's procedures for controlled buys and for using voluntary or paid confidential informants, the trial court determined that, even if text copies existed, Defendant had not met the good cause standard in that the procedures were not relevant to the credibility of the CI.[4]

2. Defendant, in response to the State's opposition to his motion to compel, argued that the requested return of search warrants and probable cause affidavits were material because they had a direct bearing on the credibility and reliability of the CI, especially given the fact that charges were not brought against Defendant directly after the searches in question. In support thereof, Defendant explained,

> The Defense has reason to believe, as stated previously, that the major part of this investigation was unfruitful ... because of [the Task Force's] reliance upon misinformation supplied by an unreliable CI. The State would like to set apart the alleged control buys as if they were an isolated incident. However, to properly defend ... Defendant at trial, a jury should be able to hear the reason for the investigation, who supplied the information, and

what (if anything) was found during the searches of ... Defendant's house.

3. Defendant also asserted in his reply that the procedures utilized have a direct bearing on the case. Defendant stated, "The Defense must know if [the Task Force] followed the correct procedure(s) when using the CI [to] make the alleged control buys and if [the] correct procedure was followed in allowing the CI to work [off] charges ... as stated in the Probable Cause Affidavit In Support And Application For A Search Warrant."

4. In its oral ruling regarding the Task Force's procedures, the trial court explained,

> This is not a trial of how ... [the] Task Force sends out its CI's, and how they pay them, or whether they're voluntary. It's going to come

¶ 8 Contrary to the trial court's ruling, the good cause requirement does not necessitate a showing that the requested material is admissible or relevant to success at trial. Instead, the good cause provision "requires only a showing that disclosure of requested evidence is necessary to the *proper preparation of the defense*" and "such a showing is made whenever the trial court is apprised of the fact that the evidence is material to an issue to be raised at trial." *State v. Spry*, 2001 UT App 75, ¶ 21, 21 P.3d 675 (emphasis added). Defendant, both in his written motion to compel and at oral argument before the trial court, clearly articulated specific concerns pertaining to the CI's credibility and reliability, and set forth the value of the requested materials for the proper investigation of the CI's credibility and preparation of the defense. Defendant informed the trial court that the State's case depended on the credibility of the CI, and therefore the return on the search warrant was essential to verify the legitimacy and accuracy of statements the CI made to officers. For example, the Task Force relied upon the CI's statement that the CI was inside Defendant's house and that Defendant sold the CI methamphetamine that had been stored in a computer desk and under the bed. Based on this statement, officers obtained a search warrant and searched Defendant's house; however, no charges were immediately brought against Defendant. Defendant argues that these circumstances indicate that the information the CI gave the officers may not have been reliable. Defendant asserts that he therefore needs a copy of the return on the search warrant to determine whether the information the CI provided coincides with the outcome of the search, such as

whether there was a desk in the room; whether the desk or under the bed was searched; and what, if anything, was found. We agree with Defendant that the requested return materials are necessary to the proper preparation of his defense. The information provided in the return on the search warrant would allow his counsel to investigate the facts of the case by giving defense counsel knowledge about whether any evidence was found that calls into question the credibility of the CI or would exculpate Defendant. Defendant apprised the trial court of the fact that the return materials were necessary for a proper defense. As a result, we conclude that Defendant has met the good cause standard under rule 16(a)(5).

¶ 9 The trial court provided an alternate basis for denying Defendant's motion to compel. In addition to considering the relevancy of the requested materials, the trial court expressed doubt that the returns on the search warrants could be located based on the prosecutor having informed the trial court that he had tried but was unable to locate the returns. The trial court stated that even if the returns were relevant the court was not sure whether the return materials could be located.[5] Defendant argues that the trial court erred in denying this request without making a substantive inquiry into who was involved in looking for the returns, how extensive the search was, or how the returns were misplaced. We agree that a further inquiry about the details and the extent of the prosecutor's search for the return materials would have been appropriate to ensure that the attempt made to locate was reasonable.[6]

down to the testimony offered, probably, by the CI, and any support and corroboration that's offered by the officers who w[ ]ere there, and if your client decides to testify against his credibility.

**5.** The trial court commented that it was not sure whether it had a copy of the return on the search warrant. And that "If [the prosecutor has not] found it here, I don't know that we can find it either, because [prior to *Anderson v. Taylor*, 2006 UT 79, ¶ 23, 149 P.3d 352 (issued on December 5, 2006) (requiring Utah state courts to retain copies of all search warrants and supporting

material) ], there was [not] an organized way of doing it."

**6.** The trial court also determined that "granting [Defendant's request for text copies of the Task Force's procedures for controlled buys and for using voluntary or paid confidential informants] wouldn't get us anywhere" because "the County Attorney's Office says they [have] checked with [the Task Force], and they don't exist[ ]." Defendant does not provide any argument that this determination was error or that text copies do in fact exist. Therefore, we do not consider this issue further.

¶ 10 Having concluded that the trial court misinterpreted the good cause requirement of rule 16(a)(5) and should have conducted a more thorough inquiry concerning the attempt that was made to locate the return materials, we next consider whether these errors warrant reversal. "A trial court's error warrants reversal only if a review of the record persuades the [appellate] court that without the error there was a reasonable likelihood of a more favorable result for the defendant." *State v. Mickelson*, 848 P.2d 677, 691 (Utah Ct.App.1992) (alteration in original) (internal quotation marks omitted). The record before us demonstrates that Troxell witnessed the CI arrange for buys on five different occasions, Troxell and other Task Force officers met the CI, gave him buy money, searched him and his vehicle to ensure that he had no drugs, and observed the CI drive to and enter Defendant's residence. Thereafter, Troxell and the other Task Force officers met the CI at a nearby location where the CI gave them the drugs he purchased from Defendant. In light of this overwhelming evidence of Defendant's guilt, we conclude that any error in denying Defendant's motion to compel was harmless.[7] Accordingly, we affirm Defendant's convictions.

## CONCLUSION

¶ 11 Under rule 16(a)(5) of the Utah Rules of Criminal Procedure, Defendant is not required to demonstrate that the requested materials are admissible or relevant to success at trial. The good cause provision requires only a showing that disclosure of the requested evidence is necessary to the proper preparation of the defense. *See Spry*, 2001 UT App 75, ¶ 21, 21 P.3d 675. Defendant made such a demonstration when he apprised the trial court of the fact that the requested evidence was material to the issue of the CI's credibility. *See id.* Because Defendant identified the evidence necessary to the proper preparation of his defense sufficient to satisfy the good cause requirement, we conclude that the trial court erred by

denying Defendant's motion to compel discovery. However, based on the overwhelming record evidence of Defendant's guilt, we determine that any error in denying Defendant's motion to compel was harmless.

¶ 12 Accordingly, we affirm Defendant's convictions.

¶ 13 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and STEPHEN L. ROTH, Judge.

---

7. Discovery rulings such as a denial of a motion to compel will not automatically escape review because the requesting party can seek review

pursuant to rule 5 of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 5.